# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

MEGHAN DOYLE,
ON BEHALF OF HERSELF AND ALL      1:17-cv-05233-NLH-AMD
OTHERS SIMILARLY SITUATED,

        Plaintiff,      **OPINION**

   v.

AD ASTRA RECOVERY SERVICES,
INC.,

        Defendant.

**APPEARANCES**:

BENJAMIN JARRET WOLF
JOSEPH K. JONES
JONES, WOLF & KAPASI, LLC
375 PASSAIC AVENUE
SUITE 100
FAIRFIELD, NJ 07004
    On behalf of Plaintiff

MICHAEL I. METZ-TOPODAS
GARY JOHN REPKE, JR.
COHEN SEGLIAS PALLAS GREENHALL & FURMAN PC
30 SOUTH 17TH STREET
19TH FLOOR
PHILADELPHIA, PA 19103
    On behalf of Defendants

**HILLMAN, District Judge**

    This matter concerns claims by Plaintiff, on behalf of herself and other similarly situated parties, against a collection agency for its efforts to collect a debt.  Presently before the Court is the motion of Defendant to compel arbitration of Plaintiff's claims.  For the reasons expressed

below, Defendant's motion will be granted.

**BACKGROUND**

On November 10, 2015, Plaintiff, Meghan Doyle, and Rapid Cash entered into an agreement for an unsecured high interest[1] installment loan for $1,500.00 that was assigned account number ****899.  Plaintiff's obligation was sent into default, and after Rapid Cash had exhausted its internal collection efforts, Plaintiff's obligation was referred to an outside collection agency, Defendant, Ad Astra Recovery Services, Inc., to undertake collection efforts.

On March 17, 2017, Plaintiff sent a letter to Ad Astra disputing the debt.  Plaintiff's letter referenced account number ****899 and asked for a breakdown of the balance allegedly owed by her.  Plaintiff maintains that because Ad Astra has failed to report the debt as disputed, Ad Astra has violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

Plaintiff has filed a putative class action complaint against Ad Astra seeking damages, as well as declaratory and injunctive relief, arising from its alleged FDCPA violation, which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.  More specifically, Plaintiff

---

[1] The APR was 434.141%.

alleges that Ad Astra violated §§ 1692e(8) and 1692e(10) of the FDCPA by communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a debt is disputed, and using false, deceptive or misleading representations or means in connection with its collection efforts.

Ad Astra has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and to compel arbitration pursuant to the "Rapid Cash Unsecured High Interest Installment Loan Agreement and Disclosure Statement." Plaintiff has opposed Ad Astra's motion, arguing that the motion should be denied because the agreement does not apply to Plaintiff's FDCPA claims. Plaintiff's argument is premised on assigned "special meanings" and specific definitions stated in the agreement, as well as language in the arbitration and class action waivers that she contends is conflicting. Plaintiff also argues that the entire agreement is invalid and unenforceable.

## DISCUSSION

**A. Subject matter jurisdiction**

Plaintiff brings this action for damages and declaratory relief arising from the Defendant's violation of 15 U.S.C. § 1692 et seq., the Fair Debt Collection Practices Act. This Court has jurisdiction over this action pursuant to 28 U.S.C. §

3

1331.

   B.  **Standard for Motion to Dismiss and to Compel Arbitration**

In those cases in which a motion to compel arbitration can be decided without evidence, the Court will apply the familiar Rule 12(b)(6) standard to the face of the pleadings. Bacon v. Avis Budget Group, Inc., 2017 WL 2525009, at *3 (D.N.J. 2017) (citing Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 771 (3d Cir. 2013) (directing that where "the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint), . . . the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery")).

Here, even though Plaintiff's complaint does not attach the agreement that contains the arbitration provision at issue, the Court may consider it because Plaintiff's claims derive from the agreement, which Plaintiff entered into with Rapid Cash and which refers to Ad Astra as a "related party."[2] Plaintiff also does not argue that discovery is required to interpret the

---

[2] On a motion to dismiss, a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

4

agreement. The Court therefore may consider whether the action must be arbitrated by way of a motion to dismiss.[3]

**C.  Analysis**

The Federal Arbitration Act (FAA) provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a private arbitration agreement is enforceable if (1) a valid arbitration agreement exists between the parties and (2) the dispute before it falls within the scope of the agreement. AT&T Mobility LLC v. Conception, 563 U.S. 333, 344–45 (2011); Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 525 (3d Cir. 2009).[4]

---

[3] In contrast, where the complaint and supporting documents are unclear as to an agreement to arbitrate, or where a plaintiff responds to a motion to compel with additional facts sufficient to place the issue of arbitrability "in issue," then the parties should be entitled to discovery, and thereafter a court may then entertain a renewed motion to compel arbitration and should review such a motion under the summary judgment standard. Bacon, 2017 WL 2525009, at *4 (citing Guidotti, 716 F.3d at 776).

[4] "' When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" Moon v. Breathless Inc., 868 F.3d 209, 213 (3d Cir. 2017) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). However, "[w]hile the interpretation of an arbitration agreement is generally a matter of state law, the FAA imposes certain rules of fundamental

5

Additionally, arbitration agreements that contain waivers of class actions are valid, <u>AT&T Mobility LLC</u>, 563 U.S. at 348,[5] and arbitration clauses have been upheld in putative FDCPA class action cases, see, e.g., <u>Gates v. Northland Group, Inc.</u>, 2017 WL 680258, at *1 (D.N.J. 2017); <u>Harris v. Midland Credit Management, Inc.</u>, 2016 WL 475349, at *3 (D.N.J. 2016); <u>Jeffreys v. Midland Credit Management, Inc.</u>, 2016 WL 4443164, at *1 (D.N.J. 2016). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." <u>Green Tree Financial Corp.-Alabama v. Randolph</u>,

---

importance," including whether a valid arbitration agreement exists between the parties, and the dispute before it falls within the scope of the agreement. <u>Stolt-Nielsen S.A. v. AnimalFeeds International Corp.</u>, 559 U.S. 662, 681 (2010) (citing 9 U.S.C. §§ 2-3) (other citations omitted). The agreement here provides that the arbitration "shall be governed by the FAA, and not Federal or state rules of civil procedure or evidence or any state laws that pertain specifically to arbitration, provided that that law of Kansas, where we are headquartered, shall be applicable to the extent that any state law is relevant in determining the enforceability of this Arbitration Provision under Section 2 of the FAA." (Docket No. 6-3 at 10.)

[5] <u>See also</u> <u>Kobren v. A-1 Limousine Inc.</u>, 2016 WL 6594075, at *4 (D.N.J. 2016) (explaining that "neither individual claims nor class arbitration waivers are unconscionable in the context of consumer adhesion contracts, even when there is a clear disparity of bargaining power and when only small monetary amounts are at issue") (citing <u>Litman v. Cellco Partnership</u>, 655 F.3d 225, 232 (3d Cir. 2011) (rejecting New Jersey law holding that waivers of class arbitration are unconscionable)); <u>Torgerson v. LCC International, Inc.</u>, 227 F. Supp. 3d 1224, 1229 n.1 (D. Kan. 2017) ("[Our court has addressed this issue, concluding that [class action waiver] provisions do not render an arbitration agreement unenforceable.") (citations omitted).

6

531 U.S. 79, 91 (2000).

The Court's analysis of whether Plaintiff's claims must be arbitrated starts with the terms of the agreement. The "Rapid Cash Unsecured High Interest Installment Loan Agreement and Disclosure Statement" (see Docket No. 6-3) provides in relevant part:

### **Terms and Conditions**

Definitions: Certain words used in this Agreement have special meanings . . . . The words "you" and "your" means the person(s) signing this Agreement as Customer. The words "we", "us" and "our" mean the Lender/Creditor identified above.

### **AGREEMENTS FOR RESOLVING DISPUTES; CERTAIN DEFINITIONS**

The Pre-Dispute Resolution Procedure, Arbitration Provision and Jury Trial Waiver set forth below govern "Claims" you assert against us or any "related party" of ours and "Claims" we or any related party assert against you.

For purposes of this Agreement, our "related parties" include all parent companies, subsidiaries and affiliates of ours (including Ad Astra Recovery Services, Inc.), and our and their employees, directors, officers, shareholders, governors, managers and members.

The term "Claim" means any claim, dispute or controversy between you and us (or our related parties) that arises from or relates in any way to this Agreement or any services you request or we provide under this Agreement ("Services"); any of our marketing, advertising, solicitations and conduct relating to your request for Services; our collection of any amounts you owe; or our disclosure of or failure to protect any information about you. "Claim" is to be given the broadest possible meaning and includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims, and claims based on any constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, negligence, fraud or other intentional wrongs) and equity. It includes disputes that seek relief of any type, including damages and/or injunctive, declaratory or other

7

equitable relief.

## ARBITRATION PROCEEDING

IF YOU DON'T REJECT THIS ARBITRATION PROVISION IN ACCORDANCE WITH SECTION I BELOW, UNLESS PROHIBITED BY APPLICABLE LAW, IT WILL HAVE A SUBSTANTIAL IMPACT ON THE WAY IN WHICH YOU OR WE RESOLVE ANY CLAIM.

Unless prohibited by applicable law and unless you reject the Arbitration Provision in accordance with Section 1 below, you and we agree that either party may elect to require arbitration of any Claim under the following terms and conditions:
 . . .

NO CLASS ACTIONS OR SIMILAR PROCEEDINGS; SPECIAL FEATURES OF ARBITRATION. IF YOU OR WE ELECT TO ARBITRATE A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO: (A) HAVE A COURT OR A JURY DECIDE THE CLAIM; (B) OBTAIN INFORMATION PRIOR TO THE HEARING TO THE SAME EXTENT THAT YOU OR WE COULD IN COURT; (C) PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION, EITHER AS A CLASS REPRESENTATIVE, CLASS MEMBER OR CLASS OPPONENT . . . .

## JURY TRIAL WAIVER

YOU AND WE ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSITUTIONAL RIGHT, BUT THAT IT MAY BE WAIVED UNDER CERTAIN CIRCUMSTANCES. TO THE EXTENT PERMITTED BY LAW, YOU AND WE AFTER HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF ALL PARTIES, WAIVE ANY RIGHT TO TRIAL BY JURY IN TH EVENT OF LITIGATION ARISING OUT OF OR RELATED TO THIS AGREEMENT. THIS JURY TRIAL WAIVER SHALL NOT AFFECT OR BE INTERPRETED AS MODIFYING ANY FASHION ANY SEPARATE ARBITRATION PROVISION BETWEEN YOU AND US, WHICH CONTAINS ITS OWN SEPARATE JURY TRIAL WAIVER

**Important Notices**

**BY SIGNING THIS AGREEMENT OR APPLYING FOR A LOAN:**

- **YOU WILL NOT BE ENTITLED TO HAVE A TRIAL BY JURY TO RESOLVE ANY CLAIM AGAINST US.**

- **YOU WILL NOT BE ENTITLED TO HAVE A COURT, OTHER THAN A SMALL CLAIMS COURT OR ASSOCIATE CIRCUIT COURT, RESOLVE ANY CLAIM AGAINST US.**

- **YOU WILL NOT BE ABLE TO BRING, JOIN OR PARTICIPATE**

**IN ANY CLASS ACTION LAWSUIT AGAINST US.**

(Docket No. 6-3; emphasis in original.)

Ad Astra argues that the agreement clearly calls for the arbitration of Plaintiff's claims against it.[6] To support its argument, Ad Astra points to Plaintiff's signature as evidence she unambiguously waived her right to have her class action claims resolved by a jury in the event that Rapid Cash - or one of its related parties - elects to arbitrate those claims, and failed to reject the arbitration provision. Ad Astra also points to the "Arbitrations Provision," which provides that "the Pre-Dispute Resolution Procedure, Arbitration Provision and Jury Trial Waiver set forth below govern 'Claims' you assert against us or any 'related party' of ours," and that Plaintiff's claims constitute a "dispute or controversy between you and us (or our related parties) that arises from or relates in any way to this Agreement." Ad Astra further points out that it is specifically named as a "related party" to Rapid Cash.[7]

---

[6] Ad Astra notes several out-of-circuit cases involving the same arbitration provision and FCDPA claims against Ad Astra where the court granted Ad Astra's motion to compel arbitration. Plaintiff challenges the applicability of those cases on several bases, including that none of the plaintiffs in those cases made the same arguments as she does. This Court does not afford those cases any weight other than noting their existence and their similar ultimate resolution.

[7] Case law supports the notion that Ad Astra, as "a parent company, subsidiary or affiliate of" Rapid Cash, can move to enforce the arbitration provision even though it is not a

9

Plaintiff rejects Ad Astra's construction of the agreement. Plaintiff points to the "Terms and Conditions" section, which defines certain words: "Definitions: Certain words used in this Agreement have special meanings . . . . The words 'you' and 'your' means the person(s) signing this Agreement as Customer. The words 'we,' 'us' and 'our' mean the Lender/Creditor identified above." Plaintiff then points to the "Important Notices" provision, which only refers to the various waivers as to "us" - i.e., Rapid Cash - and not as to any "related party."

---

signatory to the agreement between Rapid Cash and Plaintiff. See Oral Cancer Prevention Intern., Inc. v. Johnson & Johnson, 2011 WL 6130599, at *6 (D.N.J. 2011) (citing PNY Technologies v. Samsung Elec. Co., Ltd., 2011 WL 900154 (D.N.J. 2011)) (holding that that a non-signatory, that was an affiliate of a signatory, may compel arbitration where the arbitration clause in one agreement extended to the dispute that arose under another agreement between the parties); Precision Funding Group, LLC v. National Fidelity Mortg., 2013 WL 2404151, at *8 (D.N.J. 2013) ("A non-signatory's motion to compel arbitration may be granted if the non-signatory is 'closely aligned' to a contracting party.") (citation omitted); see also In re Prudential Ins. Co. of America Sales Practice Litigation All Agent Actions, 133 F.3d 225, 229–30 (3d Cir. 1998) (where Prudential was not a signatory to the agreement containing the arbitration provision but sought to compel arbitration, finding, "As stated in Form U–4, the plaintiffs agreed to arbitrate any dispute not only with Pruco, but also with 'any other person' where the claim itself would be subject to arbitration under the NASD Code. Pursuant to section 8 of the NASD Code, plaintiffs agreed to arbitrate certain disputes 'between or among members and/or associated persons....' There is no question that Prudential is a member of the NASD, and the plaintiffs are associated persons within the meaning of the Code. Thus, we conclude, as did the district court, there is a clear and unequivocal intent to arbitrate claims with third parties such as Prudential, and not just Pruco, to the extent they are eligible for arbitration under § 1.").

Plaintiff also points to the "Claims" provision, which in reference to claims arising from collection efforts, the provision only refers to "our" collection efforts, and not a related party's collection efforts. Plaintiff argues that because Ad Astra is not included in the definition of "us" or "our," the provisions cited fail to indicate that they apply Ad Astra.[8]

Plaintiff further argues that the arbitration provision is not applicable to Plaintiff's FDCPA claims against Ad Astra because Plaintiff makes no claims against Rapid Cash and takes no issue with Rapid Cash's collection efforts. Instead, Plaintiff argues that it is Ad Astra's independent failure to communicate Plaintiff's obligation as disputed, which has nothing to do with the agreement, or with Rapid Cash. Plaintiff sums up its opposition to Ad Astra's motion by arguing that the entire agreement is unenforceable as to Plaintiff's claims against Ad Astra because it does not inform Plaintiff that she is waiving her right to bring a claim for statutory damages pursuant to the FDCPA against Ad Astra - it only provides such a waiver as to Rapid Cash.

---

[8] Plaintiff also argues that the term "us" is muddled by the fact that it is first defined as Rapid Cash with a Las Vegas, NV address, but then later in the arbitration rejection provision, a party must notify "us" at Tiger Financial Management, LLC in Wichita, Kansas.

11

The Court finds that contrary to Plaintiff's arguments, the agreement covers Plaintiff's FDCPA claims against Ad Astra. The agreement is clear that: (1) "the Pre-Dispute Resolution Procedure, Arbitration Provision and Jury Trial Waiver set forth below govern 'Claims' you assert against us or any 'related party' of ours"; (2) Plaintiff's claims constitute a "dispute or controversy between you and us (or our related parties) that arises from or relates in any way to this Agreement"; (3) the term "claim" is to be given its broadest meaning and includes claims of every kind and nature; and (4) Ad Astra is specifically named as a "related party" to Rapid Cash. In plain language, the arbitration provision governs a dispute of any kind between Plaintiff and related-party Ad Astra arising out of Plaintiff's defaulted loan, if arbitration is elected by either party, and if Plaintiff does not follow the rejection of arbitration procedure.

Plaintiff's position - that the absence of reference to the "related party" in the "important terms" and "our collection efforts" provisions precludes the application of the arbitration provision - would require that in order for the arbitration provision in the agreement to be valid for her claims against Ad Astra, every time the words "we," "us" and "our" are used in the agreement, the term "or related party" must also be used. This argument would add unnecessary words to the agreement,

distorting its otherwise plain meaning, and is therefore untenable.

First, many of the provisions in the agreement do not require reference to "related party" as they only apply to Rapid Cash's customer relations with Plaintiff.  Examples of those provisions relate to method of payments, dishonored payments, telephone call monitoring, privacy policies, and communication methods.  It only makes sense to include "or related party" in the arbitration of claims section.  The Court does not find the reference to "us" – and not to "us and our related parties" – in the "Important notices" section of the agreement to be persuasive as to the unforceability of the arbitration provision.

Second, the "our collection efforts" phrase in the definition of "claim" is separate from the provision that implicates the arbitration procedure for Plaintiff's claims against Ad Astra.

> The term "Claim" means any claim, dispute or controversy between you and us (or our related parties) that arises from or relates in any way to this Agreement or any services you request or we provide under this Agreement ("Services"); any of our marketing, advertising, solicitations and conduct relating to your request for Services; our collection of any amounts you owe; or our disclosure of or failure to protect any information about you.

(Docket No. 6-3 at 8.)  Broken down, this provision provides four meanings for the term "Claim":

13

> (1) any claim, dispute or controversy between you and us (or our related parties) that arises from or relates in any way to this Agreement or any services you request or we provide under this Agreement ("Services")
>
> (2) any of our marketing, advertising, solicitations and conduct relating to your request for Services
>
> (3) our collection of any amounts you owe
>
> (4) or our disclosure of or failure to protect any information about you.

Thus, it is not the third meaning of "claim" that governs Plaintiff's claims here, but rather the first meaning.[9]

In short, the agreement clearly intends, and fully explains to the borrower, that any claims that arise from the agreement against Rapid Cash or its related party Ad Astra can be subject to arbitration. The enforcement of the arbitration provision does not eliminate Plaintiff's FDCPA claim against Ad Astra – it simply changes the forum for its resolution and prevents her from pursuing a class action. Plaintiff had options if she wished to preserve a potential FDCPA class action that could arise from the type of loan she took out with Rapid Cash. She could have found a lender whose agreement did not contain similar language as Rapid Cash's, or she could have followed the

---

[9] A strong argument could be made that "our collection efforts" encompasses Ad Astra's actions because part of Rapid Cash's efforts to collect on the loan was to engage Ad Astra to assist in those efforts. The Court also observes that the first meaning of "claim," when read in tandem with the provision that defines "claim" to be "claims of every kind and nature," can be interpreted to subsume the other three meanings.

14

procedures to reject the arbitration provision. Because Plaintiff chose neither of those options, she is bound by the terms of the agreement, including the requirement to arbitrate her claims against Ad Astra.[10] See Griswold v. Coventry First LLC, 762 F.3d 264, 271 (3d Cir. 2014) ("Courts generally apply a presumption in favor of enforcing arbitration clauses.") (citing Preston v. Ferrer, 552 U.S. 346, 349 (2008) (stating that the FAA established "a national policy favoring arbitration when the parties contract for that mode of dispute resolution"); E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber and Resin Intermediates S.A.S., 269 F.3d 187, 194 (3d Cir. 2001) ("The FAA establishes a strong federal policy in favor of compelling arbitration over litigation.")); see also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .").

Consequently, Plaintiff's complaint must be dismissed in

---

[10] Cf. Singh v. Uber Technologies Inc., 235 F. Supp. 3d 656, 675 (D.N.J. 2017) (discussing New Jersey law on unconscionability, which "requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions"); Womack v. U.S. Bankcorp, Inc., 2010 WL 11566516, at *3 (D. Kan. 2010) (discussing Kansas law un unconscionability, which is found when the terms of the contract are of such an oppressive character as to be unconscionable).

favor of arbitration.[11]

## CONCLUSION

For the reasons expressed above, Defendant's motion to dismiss Plaintiff's claims and to compel arbitration will be granted. An appropriate Order will be entered.

Date: March 6, 2018         s/ Noel L. Hillman
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.

---

[11] The Court dismisses Plaintiff's claims, rather than stay them, because Plaintiff does not request that the Court stay the action pending the resolution of the arbitration process. See Singh v. Uber Technologies Inc., 235 F. Supp. 3d 656, 676 (D.N.J. 2017) (quoting Lloyd v. Hovensa, LLC, 369 F.3d 263, 269 (3d Cir. 2004)) ("The Third Circuit has held that the plain language of § 3 of the FAA 'affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration.' Because neither party requests a stay of the proceedings, the Court dismisses the case in favor of arbitration.").